Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| XIOMARA VALENTÍN BELTRÁN<br><br>Demandante<br><br>v.<br><br>MARK MCCULLOUGH LAGATUTTA<br><br>Demandado-Recurrido<br><br>ISABEL MCCULLOUGH VALENTÍN<br><br>Interventora-Peticionaria | KLCE202401387 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso núm.:<br>K DI2014-1247 (701)<br><br>Sobre: Divorcio (Ruptura Irreparable) |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Sánchez Ramos, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 22 de enero de 2025.

El Tribunal de Primera Instancia (TPI) denegó una solicitud de hogar seguro presentada por una hija adulta de quienes constituyeron en dicho hogar su domicilio matrimonial. Según se explica a continuación, como cuestión de derecho, la solicitud no procede, pues la misma únicamente se puede presentar por el (o la) exconyuge, o por un(a) hijo(a) sujeto a la patria potestad, por lo cual actuó correctamente el TPI.

I.

En septiembre de 2014, la Sa. Xiomara Valentín Beltrán (la "Madre") presentó una *Demanda* de divorcio en contra del Sr. Mark McCullough Lagattuta (el "Padre"). Al cabo de varios incidentes procesales, el 19 de diciembre de 2014, el TPI decretó disuelto el vínculo matrimonial por la causal de ruptura irreparable.

El 7 de octubre de 2024, una hija de 21 años de edad del Padre y la Madre (Sa. Isabel McCullough Valentín, o la "Hija"), por derecho propio, solicitó al TPI que se reconociera su derecho a hogar seguro.

Explicó que, en diciembre de 2024, cumpliría 22 años y que, desde que nació, había residido en un inmueble ubicado en la Calle de La Luna del Viejo San Juan (la "Propiedad"), el cual era privativo del Padre.

La Hija aseveró que su Padre, ausente gran parte de su vida, pretendía desahuciar a su familia. Añadió que había finalizado sus estudios en política ambiental y buscaba trabajo. Además, sostuvo que se preparaba para tomar el LSAT (*Law School Admission Test*) y proseguir estudios en Derecho. Sin embargo, algunas condiciones médicas de cuidado habían retrasado sus planes. En vista de lo anterior, solicitó que se declarase la Propiedad como su hogar seguro hasta que cumpliese 25 años, bajo el Artículo 478(d) y (g) del Código Civil de Puerto Rico, 31 LPRA sec. 6852(d) y (g).

El 22 de octubre, el TPI le concedió un término de quince (15) días al Padre para que expresara su postura en torno a la solicitud de hogar seguro de la Hija. El 30 de octubre, el Padre instó una *Réplica a Moción en Solicitud de Designación de Hogar Seguro*. El Padre aseveró que no era la primera vez que la Hija solicitaba hogar seguro en el caso y que el TPI ya se había declarado sin jurisdicción para atender el asunto. En específico, hizo referencia a que, el 14 de agosto de 2019, el TPI dictó una *Resolución* en la que aclaró que la Propiedad nunca fue designada como hogar seguro y se encontraba en un proceso de ejecución de hipoteca.

El Padre añadió que había presentado un caso de desahucio y cobro de renta en contra de la Madre y el Sr. Asmel Acum Quiñones en una sala del TPI con competencia para ello, motivo por el cual no discutiría las alegaciones de la Hija.

El 6 de noviembre, el TPI notificó una *Resolución* mediante la cual denegó la solicitud de hogar seguro (el "Dictamen"). Razonó que la Hija había culminado sus estudios universitarios y, aunque

aseveró que se proponía continuar sus estudios, al momento no estudiaba.

El 20 de noviembre, la Hija solicitó la reconsideración del Dictamen, lo cual fue denegado por el TPI mediante una *Resolución* notificada el 22 de noviembre.

Inconforme, el 26 de diciembre (primer día laborable en el Poder Judicial luego del 20 de diciembre), la Hija presentó el recurso que nos ocupa. Sostiene que el TPI erró al resolver sin antes celebrar una vista evidenciara para determinar si podría tener derecho a lo solicitado al amparo de los incisos (a) y (g) del Artículo 478(d) del Código Civil, *ante.* Disponemos.

## II.

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *IG Builders et al. v. BBVAPR*, 185 DPR 307 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). Distinto al recurso de apelación, el tribunal revisor tiene la facultad de expedir el recurso de manera discrecional, por tratarse de ordinario de asuntos interlocutorios. Sin embargo, nuestra discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, reglamenta en qué circunstancias este Tribunal podrá expedir un auto de certiorari. Al respecto, dispone, en lo pertinente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el

Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. [...]

Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII–B, R. 40, establece los criterios a examinar para ejercer nuestra discreción, al disponer lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

III.

El Artículo 477 del Código Civil, 31 LPRA sec. 6851, taxativamente consigna quiénes pueden solicitar derecho a hogar seguro: "Cualquiera de los excónyuges o cualquiera de los hijos que quedan bajo su patria potestad". Ello en conexión con "la vivienda de la sociedad legal de gananciales que constituye el hogar principal

del matrimonio y de la familia antes de iniciarse el proceso de divorcio".[1]

No hay controversia en este caso en torno al hecho de que la Hija no es uno de los "excónyuges" ni tampoco está sujeta a la patria potestad de persona alguna. Por tanto, como cuestión de derecho, su solicitud no procede.

Los factores contemplados en el Artículo 478 del Código Civil, *supra,* únicamente guían la discreción del tribunal al considerar si conceder (o no) una petición de hogar seguro **presentada por una de las personas contempladas en el artículo anterior**[2]. De forma alguna se establece en el Artículo 478 lo que la Hija supone – que si ella estuviese estudiando, y por no haber cumplido los 25 años de edad, tendría derecho a solicitar hogar seguro a pesar de no ser excónyuge ni estar sujeta a la patria potestad de nadie.

Es decir, lo dispuesto en los incisos (d) y (g) del Artículo 478, *supra,* son algunos de los criterios o circunstancias que se deben

---

[1] En su totalidad, el Artículo 477 del Código Civil (*Derecho a permanecer en la vivienda familiar*), indica lo siguiente:
**Cualquiera de los excónyuges o cualquiera de los hijos que quedan bajo su patria potestad,** puede solicitar el derecho a permanecer en la vivienda de la Sociedad de Gananciales que constituye el hogar principal del matrimonio y de la familia antes de iniciarse el proceso de divorcio. Este derecho puede reclamarse desde que se necesita, en la petición de disolución del matrimonio, durante el proceso o luego de dictarse la sentencia. En los casos donde la vivienda familiar principal sea privativa de cualquiera de los excónyuges y exista otra vivienda perteneciente a la Sociedad de Gananciales, el Tribunal podrá establecer como vivienda familiar la propiedad perteneciente a la Sociedad de Gananciales. En los casos en que no exista una vivienda perteneciente a la Sociedad de Gananciales, el tribunal determinará como se cumplirá con el derecho a hogar seguro. (Énfasis provisto).

[2] El Art. 478 del Código Civil, 31 LPRA sec. 6852, dispone que:
"Para conceder el derecho a permanecer en la vivienda familiar, el tribunal debe considerar las siguientes circunstancias:
(a) Los acuerdos de los cónyuges sobre el uso y el destino de la vivienda durante la vigencia del matrimonio y después de su disolución;
(b) si el cónyuge solicitante mantiene la custodia de los hijos menores de edad;
(c) si el cónyuge solicitante retiene la patria potestad prorrogada o la tutela de los hijos mayores incapacitados o con impedimentos físicos que requieren asistencia especial y constante en el entorno familiar;
(d) si los hijos mayores de edad, pero menores de veinticinco (25) años, permanecen en el hogar familiar mientras estudian o se preparan para un oficio;
(e) si la vivienda familiar es el único inmueble que puede cumplir razonablemente ese propósito dentro del patrimonio conyugal, sin que se afecte significativamente el bienestar óptimo de los beneficiados al momento de su concesión con más necesidad de protección;
(f) si el cónyuge solicitante, aunque no tenga hijos o, de tenerlos, no vivan en su compañía, necesita de esa protección especial, por su edad y situación personal; y
(g) cualquier otro factor que sea pertinente para justificar el reclamo.

examinar cuando el tribunal debe adjudicar una solicitud presentada bajo el Artículo 477, *supra.* Dicha enumeración no añade categorías nuevas de personas con derecho a presentar una petición de hogar seguro.

En fin, lo actuado por el TPI es conforme a derecho, pues de la faz de la solicitud de la Hija surge que la misma es improcedente. Ante la ausencia de alguna otra situación que amerite nuestra intervención, declinamos intervenir con el Dictamen.

IV.

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari* solicitado.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones